FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 21 2005

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DENNIS SHACK                                          Plaintiff

v.                          4:04CV00794 WRW/JFF

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,                             Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff, Dennis Shack, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits and Supplemental Security Income, based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v.

Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged disability based on his back. (Tr. 95) The Commissioner found that he was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing and a supplemental hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through March 26, 2004, the date of his decision. (Tr. 16-17) On July 21, 2004, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6) Plaintiff then filed his complaint initiating this appeal. (Docket

---

[1]The Hon. Mark S. Anderson.

2

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 44 years old at the time of the initial hearing. (Tr. 263) He is a high school graduate. Id. He has past relevant work as a postal worker, delivery person, forklift operator, laborer, supervisor, pressman, truck driver and construction worker. (Tr. 12, 16, 77-81)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. Id., § 404.1520(c). If not, benefits are denied. Id.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. Id., § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. Id.

If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant

3

medical and other evidence. <u>Id.</u>, § 404.1520(e). This residual functional capacity assessment is utilized at Steps 4 and 5. <u>Id.</u>

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. <u>Id.</u>, § 404.1520(f). If so, benefits are denied. <u>Id.</u>

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. <u>Id.</u>, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. <u>Id.</u>

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (Tr. 16) He found that Plaintiff had a "severe" impairment (Tr. 13), but that he did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 16). He judged that Plaintiff's subjective allegations were not borne out by the overall record and were not totally credible. <u>Id.</u>

The ALJ determined that Plaintiff retained the residual functional capacity for light work. <u>Id.</u> He recognized that Plaintiff was unable to perform any of his past relevant work. <u>Id.</u> He correctly noted that, once Plaintiff was determined to be unable to perform his past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that he could perform, given his residual functional capacity, age, education and past work. (Tr. 15)

The ALJ used Rule 202.19, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 as a framework for his decision, and found that

4

AO 72A
(Rev 8/82)

there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding his limitations. (Tr. 16) Consequently, the ALJ concluded that Plaintiff was not disabled. Id.

Plaintiff's main contention on appeal is that one of the physicians who consultatively examined him, William F. Blankenship, M.D., orthopaedist, was biased against him. (Br. 13-17) Plaintiff argues that this bias arose because Dr. Blankenship spent large portions of his time performing consultative examinations for insurance companies and the Social Security Administration. (Br. 16) Plaintiff's argument is, in part, merely an untimely objection.

> You or your representative may object to your being examined by a medical source we have designated to perform a consultative examination. If there is a good reason for the objection, we will schedule the examination with another medical source. A good reason may be that the medical source we designated had previously represented an interest adverse to you. For example, the medical source may have represented your employer in a workers' compensation case or may have been involved in an insurance claim or legal action adverse to you. Other things we will consider include: The presence of a language barrier, the medical source's office location (e.g., 2nd floor, no elevator), travel restrictions, and whether the medical source had examined you in connection with a previous disability determination or decision that was unfavorable to you. If your objection is that a medical source allegedly "lacks objectivity" in general, but not in relation to you personally, we will review the allegations. See § 404.1519s. To avoid a delay in processing your claim, the consultative examination in your case will be changed to another medical source while a review is being conducted. We will handle any objection to use of the substitute medical source in the same manner. However, if we had previously conducted such a review and found that the reports of the medical source in question conformed to our guidelines, we will not change your examination.

20 C.F.R. § 404.1519j (2003).

Furthermore, Dr. Blankenship's examination did not reveal limitations that were significantly different from other treating or

5

examining physicians. Richard Peek, M.D., performed surgery on Plaintiff's back in 1993. (Tr. 105-06) He saw Plaintiff on follow-up May 1, 1997. (Tr. 107) He noted at that time that he had released Plaintiff the year before and that he had been doing well until this flare up. Id. He noted that Plaintiff was working, prescribed medications and placed him on a temporary disabled status for two days. Id. That is the last time that Plaintiff sought treatment for his back, according to the medical records. Patricia Moss, M.D., performed a general physical examination of Plaintiff April 15, 2002. (Tr. 109-16) She noted low back pain, but no heat and no joint swelling. (Tr. 111) She noted decreased range of motion of the lumbar spine and hips, but otherwise normal range of motion. (Tr. 112-13) She observed that Plaintiff was neurologically intact; he demonstrated no muscle weakness or atrophy and had no sensory abnormalities. (Tr. 113) He was unable to heel-toe walk or squat and arise from a squatting position. (Tr. 114) He appeared to be in "mild discomfort." (Tr. 111) At the hearing, Plaintiff requested an orthopaedic evaluation. (Tr. 262) One was arranged, and Plaintiff was seen by Dr. Blankenship the following month. (Tr. 126-33) Dr. Blankenship noted that Plaintiff had received no treatment since he stopped working in 2001, although he had been to the University of Arkansas for Medical Sciences for pain medication, but he had taken no pain medication for the last year. (Tr. 126) He measured Plaintiff's thighs at 19 inches each, his calves at 15 inches each. Id. He noted that knee and ankle jerks were normal, active and equal bilaterally and that straight leg raising was negative bilaterally. (Tr. 127) X rays revealed that Plaintiff's

6

spinal fusion appeared to be solid. Id. Range of motion testing was normal except that flexion-extension and lateral flexion of the lumbar spine was reduced. (Tr. 128-29) Flexion-extension of the knees and forward and backward extension of the hips were not tested, because Plaintiff stated that they caused him low back pain. (Tr. 129, 306) Dr. Blankenship completed a Medical Source Statement of Ability to do Work-related Activities (Physical). (Tr. 130-33) He offered his opinion that Plaintiff was limited to frequently and occasionally lifting/carrying 20 pounds; he had no limitation of standing and/or walking or sitting; he was limited in pushing and/or pulling in his lower extremities; he could only occasionally climb, but had no other postural restrictions and no manipulative restrictions. (Tr. 130-32)

Plaintiff's lack of prescription pain medication for significant periods of time is inconsistent with his complaints. Wingert v. Bowen, 894 F.2d 296, 299 (8th Cir. 1990); see also Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (only muscle relaxers and mild pain relievers prescribed). A lack of ongoing treatment is inconsistent with complaints of a disabling condition. Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993). In particular, a failure to seek aggressive treatment is not suggestive of disabling back pain. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988).

Plaintiff's attorney cross-examined Dr. Blankenship about his evaluation of Plaintiff. (Tr. 301-10) That was the reason for the supplemental hearing. (Tr. 296) The ALJ limited the cross-examination to the facts of the case, and did not allow a collateral

7

attack of his testimony. (Tr. 296-97, 299) Although the ALJ did not allow the introduction of certain evidence not related to the case before him, Plaintiff submitted what is presumably the same evidence to the Appeals Council, and it is a part of the transcript. (Tr. 7, 149-257) Plaintiff argues that his counsel should have been able to cross-examine Dr. Blankenship face-to-face, rather than by telephone.[2] (Br. 13-17) He relies on Richardson v. Perales, 402 U.S. 389 (1971) in support of his argument.[3] That case does not support Plaintiff's argument. It pertinent part, it reads as follows:

> We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.

Id. at 402.

The Supreme Court listed a number of factors upon which its decision rested, then noted the additional and pragmatic factor of the sheer magnitude of the administrative burden. Id. at 406. If

---

[2]Dr. Blankenship was originally subpoenaed to appear in person and testify. (Tr. 55) That subpoena was revised to allow him to testify by telephone. (Tr. 60) It appears that Dr. Blankenship was also to testify in another case that afternoon. (Tr. 299) The ALJ stated that the only way he could arrange for the testimony was by telephone. (Tr. 296)

[3]Plaintiff did not raise this issue at the hearing until after he had cross-examined Dr. Blankenship on the telephone. (Tr. 313) It does appear, however, that there had been some discussion about it beforehand. See Exhibit A to Plaintiff's brief.

AO 72A
(Rev 8/82)

physicians were routinely required to attend administrative hearings and wait for their turn to testify, they would likely be less receptive to examining claimants for the Social Security Administration. That would be especially so in instances, such as the case before the Court, where the physician in question had one hearing scheduled in the morning and another in the afternoon. Plaintiff has not demonstrated that the effectiveness of his cross-examination of Dr. Blankenship was diminished because it was by telephone as opposed to face-to-face. Under the circumstances of this case, it was not error to allow telephonic cross-examination.

Plaintiff also argues that his lack of medical treatment should not have been used to discredit him because he could not afford treatment. (Br. 17) Lack of financial resources may in some cases justify the failure to seek medical attention or follow prescribed treatment. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Such is not the case presented here. As the ALJ properly pointed out, Plaintiff sought no medical attention during times that he was still employed, and could have paid for it. (Tr. 14) Assuming that there came a time at which Plaintiff became unable to pay for medical treatment, there is no evidence that he attempted to find any low cost or no cost medical treatment for his alleged pain and disability during that time. See Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(no evidence claimant sought low cost medical treatment from her doctor or from clinics and hospitals or that she was denied medical care because of her financial condition). That is inconsistent with the degree of pain and disability asserted. It is for the ALJ in the first instance to determine Plaintiff's motivation

9

for failing to follow prescribed treatment or seek medical attention. <u>Johnson v. Bowen</u> at 275.

Finally, Plaintiff urges that the hypothetical question posed to the vocational expert did not properly embrace all of his restrictions. (Br. 18) Plaintiff does not, however, indicate what restriction(s) the ALJ improperly omitted from his hypothetical question. <u>Id.</u> Some courts treat such a failure as waiver of the argument.

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

<u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990), <u>cert. denied</u>, 494 U.S. 1082 (1992)(citations omitted).

There was no hypothetical question posed to the vocational expert. Plaintiff's point in not well taken.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. <u>E.g.</u>, <u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996); <u>Pratt v. Sullivan</u>, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion"

10

AO 72A
(Rev.8/82)

of the ALJ in this case. <u>Richardson v. Perales</u>, 402 U.S. at 401; <u>see also</u> <u>Reutter v. Barnhart</u>, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this _21st_ day of June, 2005.


UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)



# United States District Court

EASTERN DISTRICT OF ARKANSAS
U.S. COURTHOUSE
600 WEST CAPITOL AVENUE, SUITE 553
LITTLE ROCK, ARKANSAS 72201-3325

(501) 604-5190
FAX (501) 604-5378

JOHN F. FORSTER, JR.
UNITED STATES
MAGISTRATE JUDGE

June 21, 2005

Mr. Alan J. Nussbaum
Nussbaum, Hendrix, Trussell & Cockrill, P.A.
P.O. Box 34117
Little Rock AR 72203-4117

Re: <u>Dennis Shack v. Barnhart,</u>
     <u>Commissioner of Social</u>
     <u>Security Administration</u>
     Case No. 4:04CV00794 WRW/JFF

Dear Mr. Nussbaum:

Enclosed is a copy of the findings and recommendation I have
submitted to United States District Judge William R. Wilson in this
case.

The parties may file specific written objections to the findings
and recommendation and must provide the factual or legal basis for
each objection. An original and one copy of the objections must be
filed with the Clerk of Court no later than eleven days from the
date of this letter, and a copy must be served on the opposing
party. Failure to file timely objections may result in waiver of
the right to appeal questions of fact. The district judge, even in
the absence of objections, may reject the findings and
recommendation in whole or in part.

Very truly yours,

John F. Forster, Jr.

JFF/ach
Enclosure

cc: Honorable William R. Wilson, United States District Judge
    Ms. Stacey E. McCord, Assistant United States Attorney